# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 23-1611V

| |
|---|
| KATHLEEN STAUB, |
| |
| Petitioner, |
| |
| v. |
| |
| SECRETARY OF HEALTH AND HUMAN SERVICES, |
| |
| Respondent. |

Chief Special Master Corcoran

Filed: March 4, 2026

*Amy A. Senerth, Muller Brazil, LLP, Dresher, PA, for Petitioner.*

*Austin Joel Egan, U.S. Department of Justice, Washington, DC, for Respondent.*

### DECISION AWARDING DAMAGES[1]

On September 19, 2023, Kathleen Staub filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that she suffered a shoulder injury related to vaccine administration ("SIRVA"), a defined Table injury, after receiving an influenza ("flu") vaccine on August 26, 2022. Petition at 1, ¶¶ 2, 12. The matter was assigned to the "Special Processing Unit" (the "SPU"), and although Respondent conceded entitlement,

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

the parties were unable to resolve damages on their own,[3] so I ordered briefing on the matter.

For the reasons set forth below, I find that Petitioner is entitled to an award of damages in the amount of **$64,845.00**, **representing $64,000.00 for actual pain and suffering, plus** $845.00 **for past unreimbursable expenses.**

## I.      Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages

---

[3] Approximately five months after I determined Petitioner entitled to compensation, she informed me that the parties had reached an impasse in their damages discussions and requested that I set a briefing schedule. Status Report, filed May 28, 2025, ECF No. 29.

in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims. *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. *Graves v. Sec'y of Health & Hum. Servs.,* 109 Fed. Cl. 579 (Fed. Cl. 2013). *Graves* maintained that to do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 590. Instead, *Graves* assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id*. at 595. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap. Although *Graves* is not controlling of the outcome in this case, it provides reasoned guidance in calculating pain and suffering awards.

## II.      Prior SIRVA Compensation Within SPU[4]

### A.      Data Regarding Compensation in SPU SIRVA Cases

SIRVA cases have an extensive history of informal resolution within the SPU. As of January 1, 2026, 5,397 SPU SIRVA cases have resolved since the inception of SPU more than ten years before. Compensation has been awarded in the vast majority of cases (5,194), with the remaining 203 cases dismissed.

2,946 of the compensated SPU SIRVA cases were the result of a ruling that the petitioner was entitled to compensation (as opposed to an informal settlement), and therefore reflect full compensation.[5] In only 351 of these cases, however, was the amount

---

[4] All figures included in this decision are derived from a review of the decisions awarding compensation within the SPU. All decisions reviewed are, or will be, available publicly. All figures and calculations cited are approximate.

[5] The remaining 2,248 compensated SIRVA cases were resolved via stipulated agreement of the parties without a prior ruling on entitlement. These agreements are often described as "litigative risk" settlements, and thus represent a reduced percentage of the compensation which otherwise would be awarded. Because multiple competing factors may cause the parties to settle a case (with some having little to do with the merits of an underlying claim), these awards from settled cases do not constitute a reliable gauge of the appropriate amount of compensation to be awarded in other SPU SIRVA cases.

of damages determined by a special master in a reasoned decision or ruling.[6] As I have previously stated, the written decisions setting forth such determinations, prepared by neutral judicial officers (the special masters themselves), provide the most reliable guidance in deciding what similarly-situated claimants should also receive.[7]

The data for all categories of damages decisions described above reflect the expected differences in outcome, summarized as follows:

| | Damages Decisions by Special Master | Proffered Damages | Stipulated Damages | Stipulated[8] Agreement |
|---|---|---|---|---|
| Total Cases | 352 | 2,560 | 34 | 2,248 |
| Lowest | $25,000.00 | $4,000.00 | $37,013.60 | $1,000.00 |
| 1st Quartile | $66,994.13 | $58,000.79 | $87,750.00 | $30,000.00 |
| Median | **$91,163.89** | **$77,500.00** | **$112,119.37** | **$47,951.60** |
| 3rd Quartile | $125,000.00 | $105,276.51 | $160,376.79 | $73,477.50 |
| Largest | $1,569,302.82 | $1,845,047.00 | $1,500,000.00 | $550,000.00 |

### B.    Pain and Suffering Awards in Reasoned Decisions

In the 352 SPU SIRVA cases in which damages were determined via reasoned decision or ruling, compensation for a petitioner's actual or past pain and suffering varied from $25,000.00 to $215,000.00, with $89,500.00 as the median amount. Only ten of these cases involved an award for future pain and suffering, with yearly awards ranging

---

[6] The rest of these cases resulting in damages after concession were either reflective of a proffer by Respondent (2,561 cases) or stipulation (34 cases). Although all proposed amounts denote *some* form of agreement reached by the parties, those presented by stipulation derive more from compromise than instances in which Respondent formally acknowledges that the settlement sum itself is a fair measure of damages.

[7] Of course, even though *all* independently-settled damages issues (whether by stipulation/settlement or proffer) must still be approved by a special master, such determinations do not provide the same judicial guidance or insight obtained from a reasoned decision. But given the aggregate number of such cases, these determinations nevertheless "provide *some* evidence of the kinds of awards received overall in comparable cases." *Sakovits v. Sec'y of Health & Hum. Servs.*, No. 17-1028V, 2020 WL 3729420, at *4 (Fed. Cl. Spec. Mstr. June 4, 2020) (discussing the difference between cases in which damages are agreed upon by the parties and cases in which damages are determined by a special master).

[8] Two awards were for an annuity only, the exact amounts which were not determined at the time of judgment.

from $250.00 to $1,500.00.[9] In one of these cases, the future pain and suffering award was limited by the statutory pain and suffering cap.[10]

In cases with lower awards for past pain and suffering, many petitioners commonly demonstrated only mild to moderate levels of pain throughout their injury course. This lack of significant pain is often evidenced by a delay in seeking treatment – over six months in one case. In cases with more significant initial pain, petitioners usually experienced this greater pain for three months or less. Most petitioners displayed only mild to moderate limitations in range of motion ("ROM"), and MRI imaging showed evidence of mild to moderate pathologies such as tendinosis, bursitis, or edema. Many petitioners suffered from unrelated conditions to which a portion of their pain and suffering could be attributed. These SIRVAs usually resolved after one to two cortisone injections and two months or less of physical therapy ("PT"). None required surgery. Except in one case involving very mild pain levels, the duration of the SIRVA injury ranged from six to 30 months, with most petitioners averaging approximately nine months of pain. Although some petitioners asserted residual pain, the prognosis in these cases was positive.

Cases with higher awards for past pain and suffering involved petitioners who suffered more significant levels of pain and SIRVAs of longer duration. Most of these petitioners subjectively rated their pain within the upper half of a ten-point pain scale and sought treatment of their SIRVAs more immediately, often within 30 days of vaccination. All experienced moderate to severe limitations in range of motion. MRI imaging showed more significant findings, with the majority showing evidence of partial tearing. Surgery or significant conservative treatment, up to 133 PT sessions - occasionally spanning several years, and multiple cortisone injections, were required in these cases. In nine cases, petitioners provided sufficient evidence of permanent injuries to warrant yearly compensation for future or projected pain and suffering.

### III.    The Parties' Arguments

The parties agree Petitioner should be awarded $845.00 for past unreimbursed expenses. Petitioner's Brief in Support of a Damages Decision ("Brief") at 8, ECF No. 31; Respondent's Brief on Damages ("Opp.") at 2 n.1, ECF No. 32. Thus, the only area of

---

[9] Additionally, a first-year future pain and suffering award of $10,000.00 was made in one case. *Dhanoa v. Sec'y of Health & Hum. Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018).

[10] *Joyce v. Sec'y of Health & Hum. Servs.*, No. 20-1882V, 2024 WL 1235409, at *2 (Fed. Cl. Spec. Mstr. Feb. 20, 2024) (applying the $250,000.00 statutory cap for actual and future pain and suffering set forth in Section 15(a)(4) before reducing the future award to net present value as required by Section 15(f)(4)(A); *see Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552, 554-55 (Fed. Cir.1994) (requiring the application of the statutory cap before any projected pain and suffering award is reduced to net present value).

disagreement is the amount of compensation which should be awarded for Petitioner's past pain and suffering. Petitioner seeks $90,000.00, and Respondent argues for an award of $45,000.00. Brief at 1, 8; Opp. at 2, 6.

Characterizing her SIRVA as moderate to severe, Petitioner emphasizes the pain levels (five to seven) that she consistently reported, the limited range of motion ("ROM") she exhibited at her first physical therapy ("PT") session, the lack of improvement during PT sessions thereafter, the rotator cuff tears seen on MRI results, and the need for multiple corticosteroid and PRP[11] injections. Brief at 5-6. She insists that she "experienced over a year of persistent pain, limited mobility, and invasive interventions before achieving relief" – described as 80 percent improvement in pain and a return of ROM in October 2023. *Id.* at 6.

Petitioner favorably compares the facts and circumstances in her case to those experienced by the petitioners in *Danielson* and *Bruegging*[12] - featuring past pain and suffering awards of $110,000.00 and $90,000.00, respectively. Brief at 7-8. Acknowledging the longer SIRVA duration experienced by the *Danielson* petitioner, Petitioner argues that she "sought treatment sooner . . . and did not experience pain in any other area than her left shoulder." *Id.* at 7. Insisting that her award should be at least that in *Bruegging*, Petitioner accentuates her "more aggressive interventions." *Id.* at 8.

In contrast, Respondent insists that Petitioner's SIRVA was mild. Opp. at 4. He emphasizes the 48-day delay before Petitioner's initial complaint, the limited treatment (including only six PT sessions) thereafter, the full strength and ROM Petitioner experienced four months post-vaccination, and the unrelated MRI findings (arthrosis and labral tearing). *Id.* at 4.

Respondent also distinguishes the cases cited by Petitioner, emphasizing the length of time that has passed since the issuance of *Bruegging* (by another special master, moreover), and the longer treatment duration and lack of unrelated conditions in *Danielson*. Opp. at 5. Instead, as better comparable cases Respondent suggests *Leach, Baskin,* and *Valentine*[13]  – decisions involving past pain and suffering awards ranging

---

[11] PRP stands for platelet-rich plasma. MEDICAL ABBREVIATIONS at 487 (16th ed. 2020).

[12] *Danielson v. Sec'y of Health & Hum. Servs.,* No. 18-1878V, 2020 WL 8271642 (Fed. Cl. Spec. Mstr. Dec. 29, 2020); *Bruegging v. Sec'y of Health & Hum. Servs.,* No. 17-0261V, 2019 WL 2620957 (Fed. Cl. Spec. Mstr. May 13, 2019).

[13] *Leach v. Sec'y of Health & Hum. Servs.,* No. 21-0108V, 2024 WL 3358552 (Fed. Cl. Spec. Mstr. June 6, 2024) (awarding $37,500.00 for past pain and suffering); *Baskin v. Sec'y of Health & Hum. Servs.,* No. 21-2207V, 2025 WL 1891826 (Fed. Cl. Spec. Mstr. June 2, 2024) (awarding $45,000.00 for past pain and suffering); *Valentine v. Sec'y of Health & Hum. Servs.,* No. 22-0340V, 2025 WL 1707733 (Fed. Cl. Spec. Mstr. May 16, 2025) (awarding $45,000.00 for past pain and suffering).

from $37,500.00 to $45,000.00. Opp. at 5-6.

### IV.   Appropriate Compensation for Petitioner's Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

When performing this analysis, I review the record as a whole to include the filed medical records, affidavits, and sworn declarations and all assertions made by the parties in written documents. I consider prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases. However, I base my determination on the circumstances of this case.

A thorough review of the medical records reveals that Ms. Staub (age 74) suffered a moderate SIRVA injury with an acute phase of approximately four months, and significant improvement less than fourteen months post-vaccination. An MRI performed on December 8, 2022, revealed a partial thickness tear of the posterior supraspinatus tendon, but also glenohumeral arthrosis and multi-focal tearing of the glenoid labrum. Ex. 2 at 103.

Although Petitioner initially delayed seeking treatment for 48 days, she reported limited ROM and constant pain - worse with movement - and at a level of seven out of ten, through early December 2022. Ex. 2 at 30-33, 111-112; Ex. 3 at 6-15. She gained no relief from six PT sessions attended October 20 through December 2, 2022, but after a month of rest described only intermittent pain at a level of five - albeit with continued limited ROM. Ex. 2 at 112 (PT discharge summary), 35-36 (January 10, 2023 orthopedic visit). Obtaining temporary relief from a corticosteroid injection administered in January 2022, Petitioner attested to improvement of 40 percent after pain returned. *Id.* at 38 (February 2, 2023 orthopedic visit). At her next appointment a few weeks later, she reported full ROM. *Id.* at 41. By early October 2023, Petitioner reported further improvement to 80 percent following two PRP injections (administered in March and July). Ex. 9 at 14-16.

When arguing for their respective proposed pain and suffering awards, the parties both mischaracterize specific aspects of Petitioner's SIRVA. Although Petitioner correctly described her pain levels, she failed to note that her pain morphed from constant to intermittent when it decreased to a level of five out of ten, less than five months post-vaccination. Additionally, she identified early October 2023 as the point when her pain decreased and her ROM returned, but failed to acknowledge the substantial pain

reduction and full ROM noted seven months earlier (in late February 2023). Similarly, Respondent emphasized the nearly full ROM Petitioner exhibited two months post-vaccination and full ROM she obtained again in February 2023, but glossed over the very limited ROM observed in early January 2023.

Thus, the appropriate pain and suffering award should fall somewhere between the amounts the parties propose, and I do not find the comparable cases either party proposed to be particularly helpful. Although the petitioners in *Baskin* and *Valentine* suffered SIRVAs with similar overall durations, neither experienced the months-long initial period of more acute pain that Petitioner experienced. *Baskin*, 2025 WL 1891826, at *10-11; *Valentine*, 2025 WL 1707733, at *6-8. And the *Leach* petitioner's SIRVA lasted less than half as long as Petitioner's. *Leach*, 2024 WL 3358552, at *7. In contrast, the *Danielson* petitioner's SIRVA lasted almost three times longer, and the *Bruegging* petitioner suffered an initial acute period that was twice as long. *Danielson*, 2020 WL 8271642, at *3-4; *Bruegging*, 2019 WL 2620957, at 9-10.

Instead, I find that the *Langner, McKenna, Tjaden,* and *Belka*[14] cases – featuring pain and suffering awards ranging from $60,000.00 to $68,000.00 - offer the best comparisons. The *Langner* and *Belka* petitioners had a similar initial delay and overall duration. *Langner*, 2024 WL 3422749, at *5; *Belka*, 2022 WL 4717891, at *5-6. Although the *Belka* petitioner obtained quicker initial relief, he required more extensive PT, as well as multiple steroid injections. *Belka*, 2022 WL 4717891, at *5-6. Because the *Langner* petitioner's acute phase and overall duration was slightly less – by one month each, Petitioner's pain and suffering award should be slightly higher. *Langner*, 2024 WL 3422749, at *5. Relying on these determinations, I opt for a middle ground figure - $64,000.00.

### Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $64,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[15] Additionally, Petitioner**

---

[14] *Lagner v. Sec'y of Health & Hum. Servs.,* No. 20-1945V, 2024 WL 3422749 (Fed. Cl. Spec. Mstr. June 11, 2024) (awarding $60,000.00 for past pain and suffering); *McKenna v. Sec'y of Health & Hum. Servs.,* No. 21-0030V, 2023 WL 5045121 (Fed. Cl. Spec. Mstr. July 3, 2023) (awarding $65,000.00 for past pain and suffering); *Tjaden v. Sec'y of Health & Hum. Servs.,* No. 19-0419V, 2021 WL 837953 (Fed. Cl. Spec. Mstr. Jan. 25, 2021) (awarding $68,000.00 for past pain and suffering); *Belka v. Sec'y of Health & Hum. Servs.,* No. 20-0585V, 2022 WL 4717891 (Fed. Cl. Spec. Mstr. Sept. 1, 2022) (awarding $68,000.00 for past pain and suffering).

[15] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-

**is entitled to the agreed upon amount for past/actual unreimbursed expenses, $845.00.**

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $64,845.00, to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of Court is directed to enter judgment in accordance with this Decision.[16]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[16] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.